# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

EDWIN GOMEZ BLANCO,

        Petitioner,

vs.

MARKWAYNE MULLIN, et al.,[1]

        Respondents.

No. 26-CV-61-CJW-KEM

**ORDER**

_____

Petitioner Edwin Gomez Blanco's petition for writ of habeas corpus is before the Court. (Doc. 1). Respondents filed a response. (Doc. 9). Petitioner filed a reply. (Doc. 13). For the following reasons, the Court **grants-in-part and denies-in-part** petitioner's petition for writ of habeas corpus and **orders** that respondents provide him with a bond hearing.

## I.    BACKGROUND

Petitioner is a citizen of Colombia. (Doc. 12-2, at 1). On September 3, 2023, he arrived in the United States near El Paso, Texas. (*Id.*). He entered without inspection and was not admitted or paroled. (*Id.*). On September 9, 2023, United States Border Patrol ("USBP") served petitioner a Notice to Appear ("NTA") charging him with being inadmissible for being present in the United States without being admitted or paroled. (Doc. 12-2); s*ee* 8 U.S.C. § 1182(a)(6)(A)(i) ("An alien[2] present in the United States without being admitted or paroled, or who arrives in the United States at any time or

---

[1] Under Federal Rule of Civil Procedure 43(c)(2), Secretary Mullin is automatically substituted for Kristi Noem.

[2] The United States Code and the accompanying federal regulations use the term "alien." To maintain consistency with the statutory and regulatory text, the Court will use the same term in this Order.

place other than as designated by the Attorney General, is inadmissible[.]"). USBP also issued a warrant for petitioner's arrest. (Doc. 12-3). The same day, USBP released petitioner from its custody on an order of recognizance. (Docs. 1-2 & 12-4). The order stated that employment was not authorized for petitioner, (*Id.*), however, petitioner later applied for asylum, which came with work authorization, (Doc. 12-1, at 4).

On February 5, 2026, petitioner was arrested in Davenport and charged with public intoxication and interference with official acts. (Doc. 12-8, at 1–4); *see* Iowa Code §§ 123.46(2), 719.1(1)(B). Petitioner pled guilty to both charges. (Doc. 12–8, at 5). On February 6, 2026, Immigration and Customs Enforcement ("ICE") issued a new warrant for petitioner's arrest and took petitioner into custody from the Scott County Jail. (Doc. 12-6). On February 8, 2026, ICE issued a notice to the Executive Office of Immigration Review that it was holding petitioner at the Linn County Jail. (Doc. 12-7).

On March 18, 2026, petitioner filed the instant petition with the Court, requesting immediate release. (Doc. 1, at 14). In the alternative, petitioner states: "If this court finds immediate release inappropriate, [p]etitioner requests that this [C]ourt order a bond hearing within five days, where the burden is on the [g]overnment to prove by clear and convincing evidence that [petitioner] poses a danger or flight risk." (*Id.*, at 15). In support of his motion, petitioner provided the Court with Exhibit 1. (Doc. 1-2). On April 10, 2026, respondents filed a response, arguing "[p]etitioner's detention is authorized by statute and is constitutional." (Doc. 9, at 1). They also provided the Court with a declaration from Peter Miller and Exhibits A, B, C, D,[3] E, F, and G. (Docs. 12-1, through 12-8). On April 17, 2026, petitioner filed a reply. (Doc. 13). Petitioner remains in ICE custody at the Linn County Jail.[4]

---

[3] Exhibit 1 and Exhibit D are both the order of release on recognizance.

[4] https://locator.ice.gov/odls/#/results.

## II. LEGAL STANDARD

"Habeas is at its core a remedy for unlawful executive detention." *Munaf v. Green*, 553 U.S. 674, 693 (2008). Habeas corpus relief is available to those "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c). The right to challenge the legality of a person's confinement "through a petition for a writ of habeas corpus . . . extents to those persons challenging the lawfulness of immigration-related detention." *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2022) (citing *Presider v. Rodriguez*, 411 U.S. 475, 485 (1973); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); and *Demore v. Kim*, 538 U.S. 510, 517 (2003)). The petitioner bears the burden of proving by a preponderance of the evidence that their detention is unlawful. *Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025); *Walker v. Johnston*, 312 U.S. 275, 286 (1941); *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009) ("[T]he burden of proof under § 2241 is on the prisoner."); *Odell v. Hudspeth*, 189 F.2d 300, 302 (10th Cir. 1951) (stating that the burden of proof was upon the petitioner).

## III. DISCUSSION

Petitioner argues that his continued detention without a bond determination violates the Due Process Clause of the Fifth Amendment as well as the applicable statute. (Doc. 1, at 15–17). Because it determines the rest of petitioner's path towards relief, the Court begins with the statutory argument.

### A. Statutory Argument

Before getting to petitioner's constitutional claim, the Court first addresses petitioner's claim that he is detained under Title 8, United States Code, Section 1226(a), which permits release on bond or a person's own recognizance. (Doc. 1, at 17; Doc. 13, at 1–4). Respondents contend that, on the contrary, petitioner is not detained under

§ 1226(a), but rather that he is an applicant for admission subject to mandatory detention under 8 U.S.C. § 1225(b)(2).  (Doc. 9, at 3).

While this case was pending, the Eighth Circuit issued its opinion in *Herrera Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026).  After conducting statutory interpretation of both Title 8, United States Code, Sections 1225(b)(2)(A) and 1226(a), the Eighth Circuit determined that Section 1226(a), which permits discretionary release on bond, does not govern the detention of aliens apprehended inside of the United States who have not been lawfully admitted.  *Id.* at 1137.  Rather, those aliens fall under the category contemplated by Section 1225(b)(2)(A), which requires mandatory detention for aliens not lawfully admitted.  *Id.* at 1139–40.  The Court is bound by Eighth Circuit precedent.  *Harrington v. Wilber*, 670 F.Supp.2d 958, 967 (S.D. Iowa 2009) ("This Court is obligated to abide by the decisions of the Eighth Circuit Court of Appeals, because such decisions are controlling until overruled by the Eighth Circuit en banc, by the Supreme Court, or by Congress." (cleaned up)).  This is so despite petitioner's appeals to *Maldonado Bautista v. Santacruz*.  *See, e.g.*, (Doc. 1, at 13).  *But see Maldonado Bautista v. Dep't Homeland Sec'y*, No. 26-1044 (9th Cir. Mar. 6, 2026)*,* Dkt. 129 (temporarily staying the district court's February 18, 2026 order in *Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM, 2026 WL 468284, at \*10 (C.D. Cali. Feb. 18, 2026)).  Thus, under controlling precedent, petitioner is detained under Section 1225(b)(2)(A), not 1226(a).

Petitioner's request for habeas corpus relief is **denied** on this ground.

### B.    *Due Process Clause Argument*

Next, petitioner argues that "[t]he government's detention of [p]etitioner is unjustified.  Respondents have not demonstrated that [p]etitioner needs to be detained." (Doc. 1, at 15).  Respondents claim that "[p]etitioner's detention during removal proceedings is also consistent with due process" as his "detention is mandated by statute and is therefore constitutional."  (Doc. 9, at 4).  In his reply, petitioner argues that

4

"[p]etitioner's deprivation of his liberty by being deprived of the opportunity to request a bond hearing is a violation of the Due Process Clause of the Fifth Amendment." (Doc. 13, at 4). The Court addresses this argument next.

"[O]ur immigration laws have long made a distinction between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality." *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958). More specifically, the Supreme Court has found that the Due Process Clause extends to all persons present in the United States regardless of their immigration status. *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025); *accord Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) ("[T]he Fifth Amendment entitles aliens to due process of law in the context of removal proceedings."). Thus, aliens have due process rights to life, liberty and property. U.S. Const., amend. V; *Mathews v. Diaz*, 426 U.S. 67, 77 (1976). "This is because once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Hernandez Marcelo v. Trump*, No. 25-cv-00094, 2025 WL 2741230, at *8 (S.D. Iowa Sept. 10, 2025) (citing *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)).

"In the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens." *Mathews*, 426 U.S. at 79–80. At the same time, once the government opts to provide a liberty interest, it cannot arbitrarily revoke that interest without due process of law. *See Wolff v. McDonnell*, 418 U.S. 539, 558 (1974). "A person's liberty is equally protected by the due process clause, even when the liberty itself is a creation of the State." *Id.* at 558. This applies to administrative agencies as well, and "an administrative agency may not apply a new rule retroactively when to do so would unduly intrude upon reasonable reliance interests." *Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S.

5

51, 61 n.12 (1984). A person released from custody "has at least an implicit promise" that his release "will be revoked only if he fails to live up to the parole conditions." *Morrissey. v. Brewer*, 408 U.S. 471, 482 (1972).

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). To determine exactly the parameters of that opportunity to be heard the Court balances:

(1) the private interest that will be affected by the official action; against
(2) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail; and
(3) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards.

*Id.* at 335 (cleaned up).

Regarding the two interests weighed and the first factor, "the interest in being free from physical detention by one's own government" "is the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Put another way, "freedom from imprisonment lies at the heart of the liberty that the Due Process Clause protects" *Zadvydas*, 533 U.S. at 690 (cleaned up); *accord Barrajas v. Noem*, No. 25-cv-00322, 2025 WL 2717650, at *6 (S.D. Iowa Sept. 23, 2025) (applying this rule to immigration detention). Regarding the second factor, "the Court considers 'whether the challenged procedure creates a risk of erroneous deprivation of individuals' private rights and the degree to which alternative procedures could ameliorate these risks.'" *Gunaydin v. Trump*, 784 F.Supp.3d 1175, 1187 (D. Minn. 2025). Lastly, in looking at the risk of erroneous deprivation, courts consider the costs of additional procedure "including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

6

Here, petitioner acquired a liberty interest in release on his own recognizance when the government released him in 2023. The government has now arbitrarily revoked that interest by detaining him without demonstrating danger or flight risk. *See Singh v. Mullin*, No. C26-56-LTS-MAR, 2026 WL 1021846, at *4 (N.D. Iowa Apr. 15, 2026) (ordering immediate release of an alien previously released on $17,000 bond based on a due process clause violation); *Ermekov v. Mullin*, No. C26-41-LTS-KEM, 2026 WL 1046766, at *3–4 (N.D. Iowa Apr. 17, 2026) (ordering immediate release of an alien previously released on an order of recognizance based on a due process clause violation). *But see Romero v. Brown*, No. 1:26-cv-00007-SMR-SBJ, 2026 WL 1021455, at *5 (S.D. Iowa Apr. 15, 2026) ("mandatory detention pending a determination of removability comports with due process"). Thus, given petitioner's strong interest in release and the relatively minimal burden on the government in providing a bond hearing, the *Mathews* factors favor providing petitioner's a bond hearing.

Respondents cite to cases analyzing the due process requirements of detention under Title 8, United States Code, Section 1226(c) to argue the contrary. *Demore v. Kim*, 538 U.S. 510, 523 (2003) (analyzing the detention of an alien with a "a long criminal record, involving drug crimes, attempted robbery, attempted burglary, and theft" and an order of deportation to Germany and another alien who was "convicted of manslaughter"); *Banyee v. Garland*, 115 F.4th 928, 931 (8th Cir. 2024) (analyzing the detention of an alien who was convicted of "theft, lying to the police . . . possessing marijuana and drug paraphernalia . . . [and] robbery with a dangerous weapon"). But in those cases, besides the detention being based on a different subsection of the statute, the government had demonstrated that the petitioner there was a danger or a flight risk, based on their criminal convictions. That is not the case here. Although respondents allege that petitioner's convictions for public intoxication and interference with official acts were a violation of the terms of petitioner's order of recognizance, (Doc. 12-1, at 4) the fact

7

of these convictions alone does not demonstrate danger to the community nor flight risk. Nor has the government provided petitioner with the opportunity to respond to its assertion that these convictions evidence danger to the community or flight risk.

At the same time, based on those criminal convictions, the Court finds, despite its sister court ordering immediate release, that respondents must provide petitioner with a bond hearing. *See Dos Santos Silva v. Warden*, 8:26-CV-131, 2026 WL 926725, at \*2 (D. Neb. Apr. 6, 2026) ("the proper remedy in this case is to order the government to provide the petitioner a bond hearing, to determine whether the petitioner may be released"). At the hearing, the government will bear the burden to demonstrate dangerousness or flight risk. *See Dambreville v. Noem*, No. 4:25-cv-00514-SMR-SBJ, 2026 WL 602174, at \*5 (S.D. Iowa Jan. 12, 2026) ("The Court therefore orders that at the bond hearing, the Government must prove by clear and convincing evidence that Petitioner's continued detention is warranted based on flight risk or dangerousness. This allocation reflects settled practice in redetention cases."). This is so because "[w]hen the [g]overnment seeks to continue detaining someone it previously released, fairness demands that the [g]overnment shoulder the burden of justifying that detention." *Id.*; *see also Trsikurishvili v. Noem*, No. C26-15-LTS-MAR, 2026 WL 594360, at \*2 (N.D. Iowa Mar. 3, 2026) (ordering that the government "must provide [petitioner] a pre-detention hearing in which it bears the burden of proving by clear and convincing evidence that [he] is a danger to the community or flight risk or has failed to comply with the terms of his release"). Petitioner's request for habeas corpus relief is **granted** on this ground.

## IV. CONCLUSION

For those reasons, petitioner's petition for writ of habeas corpus (Doc. 1) is **granted-in-part and denied-in-part**. The Court hereby orders that within fourteen (14) days of the date of this order respondents provide petitioner an individualized bond

8

hearing before an immigration judge at which the government bears the burden to demonstrate petitioner's dangerousness or flight risk.

**IT IS SO ORDERED** this 28th day of April, 2026.

_____

C.J. Williams, Chief Judge
United States District Court
Northern District of Iowa

9